[Cite as *State v. Lewis*, 2022-Ohio-1850.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 21 CAA 03 0017 |
| KENNETH LEWIS | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                              Pleas, Case No.  20 CR I 08 0555


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       June 1, 2022


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MELISSA A. SCHIFFEL                   APRIL F. CAMPBELL
PROSECUTING ATTORNEY                  CAMPBELL LAW, LLC
CHRISTOPHER E. BALLARD                46 1/2 North Sandusky Street
ASSISTANT PROSECUTOR                  Delaware, Ohio  43015
145 North Union Street, 3rd Floor
Delaware, Ohio  43015

*Wise, P. J.*

**{¶1}** Defendant-Appellant Kenneth Lewis appeals the judgment entered by the Delaware Court of Common Pleas convicting him of Aggravated Robbery in violation of R.C. §2911.01(A)(1), and two counts of Kidnapping in violation of R.C. §2905.01(B)(2). Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On September 18, 2020, Appellant was indicted on one count of Aggravated Robbery in violation of R.C. §2911.01(A)(1) and two counts of Kidnapping in violation of R.C. §2905.01(B)(2), with accompanying firearm specification pursuant to R.C. §2941.145 and Repeat Violent Offender specifications pursuant to R.C. §2941.149 on each count.

**{¶3}** On January 12, 2021, the case proceeded to a jury trial.

**{¶4}** At trial, Priscilla Smith testified she is a supervisor at CVS pharmacy located at 190 South Sandusky Street in Delaware, Ohio. This CVS is located one block from the Cashland pawn shop where the robbery occurred.

**{¶5}** Smith testified that on August 28, 2020, she was the manager on duty, and that the security cameras were working. Smith testified that the video evidence and printouts were fair and accurate copies of the surveillance cameras from that night. Smith provided the surveillance video to law enforcement even though she was not authorized by CVS to do so. The trial court admitted the video into evidence over Appellant's objection.

**{¶6}** The video surveillance showed Appellant entering CVS wearing dark clothing and carrying a dark shopping bag. He walked to the back of the store, removed his outer long-sleeved shirt, placed it in the shopping bag, and exited the store.

**{¶7}** The State's second witness, Mark Johnson, testified he was a resident on South Franklin Street in Delaware, Ohio. Johnson's home was equipped with exterior surveillance cameras. The trial court admitted the footage and still images without objection.

**{¶8}** Next, Crystal Cornelius testified that she was working on August 28, 2020, at the Cashland Pawnshop in Delaware. That day she worked with Nikki Postle. After opening at ten in the morning, a masked man came around the counter with a black handgun and ordered Cornelius and Postle to put their hands up and take him to the safe. The man forced Cornelius and Postle to the back of the shop and ordered Postle to lay on her stomach while Cornelius opened one safe, which had a five-minute delay.

**{¶9}** Postle told the man the cash register had money. As the man retrieved the money from the cash registers in the front of the store, Cornelius pushed a panic alarm. The man forced Cornelius to open two other safes, which did not have time delays. The man took jewelry from the safe, cash from the timed safe, and a bag of cash from Cornelius's desk.

**{¶10}** Surveillance footage from Cashland was admitted into evidence over defense objection. The video shows the man wearing a grey long-sleeved Carhartt shirt, ordering Cornelius and Postle to stay in the back office, leaving the back room where Cornelius and Postle were, then returning to check to make sure they had not moved.

{¶11} Next, Postle testified that she was working with Cornelius at the Cashland pawnshop on August 28, 2020. Postle continued that a man entered Cashland with a gun, came behind the counter, grabbed her by the arm, and asked where the money was kept. The man took Cornelius and Postle into the office and ordered Postle to lay face down.

{¶12} Next, Detective Sean Franks testified he was in Delaware in an unmarked car when he noticed a man in a white shirt and jeans walking towards him from the direction of the CVS. Franks identified Appellant as the man he had seen.

{¶13} Franks saw this man get into a white Ford Escape. Franks thought this was suspicious, as the man carried a shopping bag, but was parked in a residential area two blocks away from any store. Franks obtained the license plate number which returned the Appellant's name. Franks then stopped following Appellant to assist with a neighborhood canvas.

{¶14} Later in the investigation, Franks reviewed Johnson's surveillance footage. The footage showed Appellant arriving in the white Ford Escape, retrieving a dark colored shirt, and walking toward Cashland. After the robbery, Johnson's surveillance video showed Appellant running behind a residence, through a yard, and then into his vehicle. Franks retrieved a grey Carhartt shirt from the yard Appellant ran through.

{¶15} BCI Forensic Scientist, Allison Mansius, testified Appellant was the main contributor to the DNA profile found on the grey Carhartt shirt Franks retrieved.

{¶16} The State next called Ryan Bundy to the stand. The defense objected, as Bundy was not on the witness list. However, the trial court allowed Bundy to testify as he had only come forward with the information the day before, after the trial had

commenced. Detective Strasser's interview recording and summary were presented to defense counsel, along with Bundy's criminal history.

{¶17}  Bundy testified that he was an inmate in the Delaware County Jail on drug charges and had been incarcerated with Appellant. Bundy has previously been convicted of aggravated menacing, burglary, and aggravated burglary. Bundy testified that while discussing their cases, Appellant told him he had "cased the place" a couple days before, and gone in wearing a mask, a hat, and makeup to cover his tattoos. Appellant said he took two people into the back room, made them open the safe, and made one lay on the ground. Appellant said he had left clothes nearby to change into after the robbery and traveled to Florida to dispose of the stolen goods and firearm.

{¶18}  Bundy testified he had not been promised anything for his testimony. He came forward because his sister had been killed in a convenience store robbery and felt obligated to speak up. He said Appellant was bragging in jail that he was going to get away with the robbery.

{¶19}  Last, the State called Detective Daniel Madden to testify. Madden responded to the Cashland robbery. Upon arriving Madden reviewed surveillance video for guidance in an attempt to collect DNA or fingerprints. Madden noted the man on the video was touching things with a rag, acting as a barrier to prevent finger prints. Appellant's Ford escape was found unoccupied in Columbus and impounded.

{¶20}  Madden testified he contacted Appellant in September of 2020 via cell phone, as Appellant was in Florida. Appellant then took a bus back to Cincinnati where he was arrested by federal agents. Appellant gave a false name when being taken into custody and had several thousand dollars in cash, several gold chains, one with a cross

pendant, and clothing consistent with the video of Appellant on the date of the robbery. Madden could not confirm the jewelry Appellant possessed at the time of arrest was the same jewelry taken from Cashland.

{¶21} On January 14, 2021, the jury returned a verdict of guilty on all counts, but acquitted of the firearm specification.

{¶22} On March 8, 2021, the trial court sentenced Appellant to serve a minimum of eleven years on Count One, a minimum of eleven years on Count Two, and a minimum of eleven years on Count Three, to be served consecutively for an aggregate sentence of thirty-three to thirty-eight and a half years.

### ASSIGNMENTS OF ERROR

{¶23} Appellant filed a timely notice of appeal raising the following three Assignments of Error:

{¶24} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ADMITTING TWO PIECES OF EVIDENCE USED TO LINK LEWIS TO THE CRIME CHARGED: IMPROPERLY AUTHENTICATED CVS VIDEO FOOTAGE OF THE SUSPECT, AND A SURPRISE WITNESS.

{¶25} "II. THE EVIDENCE THAT LEWIS WAS THE PERSON WHO COMMITTED THE CRIMES CHARGES [sic] WAS LEGALLY INSUFFICIENT AS A MATER OF LAW.

{¶26} "III. THE TRIAL COURT SHOULD HAVE MERGED LEWIS'S AGGRAVATED ROBBERY OFFENSE WITH HIS KIDNAPPING OFFENSES."

**I.**

**{¶27}** In Appellant's First Assignment of Error, Appellant argues that trial court erred in admitting the surveillance video from CVS without proper authentication and allowing Ryan Bundy to testify. We disagree.

### a. Standard of Review

**{¶28}** "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake City*, 58 Ohio St.3d 269, 569 N.E.2d 1056 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

### b. Admissibility of CVS Surveillance Footage

**{¶29}** Appellant argues the CVS video footage was admitted without proper authentication. We disagree.

**{¶30}** Evid.R. 901(A) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Pyles*, 4th Dist. Scioto No. 17CA3790, 2018-Ohio-4034, ¶48. The proponent of the evidence need show only a reasonable likelihood of authenticity.

*Id.* "Circumstantial, as well as direct, evidence may be used to show authenticity." State v. *Vermillion*, 4th Dist. Athens No. 15CA17, 2016-Ohio-1295, ¶14.

**{¶31}** This Court held, "[p]hotographic evidence, including videotapes, can be admitted under a "pictorial testimony" theory or a "silent witness" theory." *State v. Wilson*, 5th Dist. Stark No. 2016CA00071, 2016-Ohio-5895, ¶66; citing *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-130 (1991). "Under the silent testimony theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence. *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-130 (1991). Testimony from an individual with personal knowledge of the surveillance system's recording process is not required. *Vermillion* at ¶¶17, 20.

**{¶32}** In *State v. Farrah*, 10th Dist. Franklin No. 01AP-968, 2002-Ohio-1918, the Tenth District Court of Appeals found the trial court did not err in admitting surveillance video that depicted a store robbery authenticated by an officer who had been to the store on prior occasions. The officer testified that the surveillance video accurately portrayed how the store looked at the time of the robbery.

**{¶33}** In the case *sub judice*, Priscilla Smith, the manager of the CVS, while not seeing Appellant change his clothes in the back of the CVS, had been working the night of the Cashland robbery. Smith continued that she had reviewed the surveillance camera footage from that evening, and that the footage presented at trial is a true and accurate depiction of the CVS on the date of the robbery. Therefore, the trial court did not abuse its discretion by admitting the video footage obtained from the CVS. Rather, the trial court

reasonably could have concluded that the state satisfied the low threshold necessary to demonstrate authenticity.

### b. Admissibility of Ryan Bundy's Testimony

**{¶34}** Appellant argues the trial court erred in admitting Ryan Bundy's testimony because Bundy was a "surprise" witness whose testimony prejudicially harmed Appellant. We disagree.

**{¶35}** Crim.R. 16(I) reads, in pertinent part, "Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal."

**{¶36}** A review of the record indicates that Ryan Bundy came forward as a potential witness after the trial had started. Appellee promptly provided Appellant with Bundy's criminal history, a recording of detective's interview, and the detective's summary of the interview.

**{¶37}** After examining the record, we do not find any evidence that the prosecutor had a duty under Crim.R. 16(I) to disclose Ryan Bundy on the witness list as Appellee had no knowledge of Bundy's willingness or ability to testify. Ryan Bundy only came forward as a witness after the trial began. Therefore, Appellee could not have intended to call Bundy as a witness prior to trial. Accordingly, the trial court did not abuse its discretion in admitting Bundy's testimony.

**{¶38}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶39}** In Appellant's Second Assignment of Error, Appellant argues his conviction is not supported by sufficient evidence without the CVS video and testimony of Ryan Bundy. We disagree.

**{¶40}** Sufficiency of evidence is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. A sufficiency of evidence standard requires the appellate court to examine the evidence in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶41}** R.C. §2911.01, in pertinent part, states:

(A)     No person, in attempting or attempting to commit a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1)     Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

**{¶42}** R.C. §2905.01, in pertinent part, states:

(B)     No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a

substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

* * *

(2) Restrain another of the other person's liberty.

{¶43} We note the CVS video footage and testimony of Ryan Bundy are admissible due to our disposition of Appellant's First Assignment of Error.

{¶44} In the case *sub judice*, Cornelius and Postle testified they were working at Cashland on August 28, 2020. While at Cashland, an armed man forced them into the back of the store and forced them to open the store's safes, stole jewelry and cash from the safes and cash from the registers and Cornelius's desk. He instructed them to lay on their stomachs.

{¶45} Surveillance footage of the robbery from Cashland showed the man wearing a dark, long-sleeved Carhartt shirt, ordering Cornelius to open safes at gun point, ordering Postle to lay on the ground, leaving the backroom after he stole jewelry and cash, then returning to make sure Cornelius and Postle had not moved.

{¶46} Surveillance footage from CVS showed Appellant enter the store with a shopping bag, change out of a dark, long-sleeved Carhartt shirt, then exit the store.

{¶47} Detective Franks testified he saw Appellant walking in a white shirt from the CVS to his white Ford Explorer parked in a residential area away from stores or restaurants, carrying a shopping bag. Franks also testified that video footage obtained from Mark Johnson shows Appellant arriving in his white Ford Explorer retrieving a dark

long-sleeve shirt from the vehicle and walking toward Cashland. Franks retrieved a dark, long-sleeved Carhartt shirt from the yard Appellant walked through.

**{¶48}** Forensic Scientist, Allison Mansius, testified Appellant's DNA profile matched a major DNA contributor to the dark, long-sleeved Carhartt shirt retrieved by Franks.

**{¶49}** Ryan Bundy testified Appellant told him that Appellant "cased" Cashland a couple days before the robbery, went in wearing a mask, made the two employees open up safes, and made one lay on the ground. Appellant told Bundy he changed clothes in a store near the robbery. Appellant then went to Florida to get rid of the stolen goods and the firearm.

**{¶50}** Detective Madden testified Appellant was arrested by federal agents in Cincinnati. Upon being arrested, Appellant provided law enforcement a fake name and had several thousand dollars and jewelry on him.

**{¶51}** It is well established that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216.

**{¶52}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 297252 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95AP09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a

witness's testimony, but may accept only portions of it as true." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶53} We find the State presented sufficient evidence, if believed by a jury, that Appellant brandished a firearm while committing a theft offense and restrained another's personal liberty by threat of force.

{¶54} Appellant's Second Assignment of Error is overruled.

### III.

{¶55} In Appellant's Third Assignment of Error, Appellant argues the trial court erred by failing to merge Appellant's Aggravated Robbery offense with Appellant's Kidnapping offenses. We disagree.

{¶56} The jury found Appellant guilty of Aggravated Robbery in violation of R.C. §2911.01(A)(1) which states, in pertinent part:

(A) No person, in attempting or attempting to commit a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1)      Have a deadly weapon on or about the offender's person or

under the offender's control and either display the weapon, brandish it,

indicate that the offender possesses it, or use it[.]

**{¶57}** The jury also found Appellant guilty of Kidnapping in violation of R.C.

§2905.01, which, in pertinent part, states:

(B)      No person, by force, threat, or deception, or, in the case of a

victim under the age of thirteen or mentally incompetent, by any means,

shall knowingly do any of the following, under circumstances that create a

substantial risk of serious physical harm to the victim or, in the case of a

minor victim, under circumstances that either create a substantial risk of

serious physical harm to the victim or cause physical harm to the victim:

* * *

(2) Restrain another of the other person's liberty.

**{¶58}** Appellant argues the trial court erred in refusing to merge the two

convictions in violation of R.C. §2941.25 which states the following:

(A)      Where the same conduct by defendant can be construed to

constitute t wo or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant

may be convicted of only one.

(B)      Where the defendant's conduct constitutes two or more

offenses of dissimilar import, or where his conduct results in two or more

offenses of the same or similar kind committed separately or with a

separate animus as to each, the indictment or information may contain

counts for all such offenses, and the defendant may be convicted of all of them.

**{¶59}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, Supreme Court of Ohio held:

1.      In determining whether offenses are allied of similar import within the meaning of R.C. 2841.25, courts must evaluate three separate factors – the conduct, the animus, and the import.

2.      Two or more offenses of dissimilar import exist within the meaning of R.C. 2841.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3.      Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

**{¶60}** In paragraph 26 of the opinion, the *Ruff* court stated:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a

defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of RC. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* at ¶26.

**{¶61}** It is possible for Aggravated Robbery and Kidnapping, under certain circumstances, to merge as allied offenses of similar import. *See, e.g.*, *In re A.G.*, 8th Dist. Cuyahoga No 101010, 2016-Ohio-5616 (where the victim opened his car door after obtaining cash from an ATM, the defendant pulled a gun from his pocket and threatened to shoot the victim unless he got into the car); *State v. Randle*, 3d Dist. Marion Nos. 9-17-08 & 9-17-09, 2018-Ohio-207 (where the defendant locked the victim in a back room of the store after emptying the cash register).

**{¶62}** In *State v. Hart*, 5th Dist. Richland No. 2019 CA 0086, 2020-Ohio-1640, *appeal not allowed*, 159 Ohio St.3d 1477, 2020-Ohio-4045, 150 N.E.3d 960, during a robbery at Circle K, the defendant threatened with a gun and took money from two separate victims. In *Hart*, this Court found the defendant's convictions did not merge as each robbery was committed with a separate animus. *Id.* ¶34.

**{¶63}** In the case *sub judice*, Appellant entered Cashland, forced Postle and Cornelius into the back office, stole jewelry and cash from the safes belonging to Cashland, stole cash from the cash register belonging to Cashland, and ordered

Cornelius and Postle to stay in the back office. Appellant then left after completing the burglary but returned to ensure Postle and Cornelius had not moved. Therefore, the Kidnapping of Crytal Cornelius, the Kidnapping of Nikki Postle, and the Aggravated Robbery of the Cashland were committed separately, against different victims and were of dissimilar import. Therefore, the trial court did not err in failing to merge the Aggravated Robbery count with either Kidnapping count, as they are not allied offenses of similar import under the circumstances of this case.

**{¶64}** Appellant's Third Assignment of Error is overruled.

**{¶65}** For the foregoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/br 0727