[Cite as *State v. Patterson*, 2023-Ohio-3579.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2023CA00027 |
| KENNETH LEROY PATTERSON | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Stark County Court of Common Pleas, Case No. 2022CR2527

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: October 2, 2023

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South – Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

BERNARD HUNT
2395 McGinty Road, N.W.
North Canton, Ohio 44720

*Hoffman, J.*

{¶1} Defendant-appellant Kenneth L. Patterson appeals his conviction and sentenced entered by the Stark County Court of Common Pleas, on one count of violating a protection order, following a jury trial. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶2} On November 18, 2022, complaints were filed in the Canton Municipal Court, charging Appellant with felonious assault, in violation of R.C. 2903.11(A), a felony of the second degree; disrupting public services, in violation of R.C. 2909.04(A)(1), a felony of the fourth degree; and domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree. Appellant appeared before the municipal court for arraignment on the same day, and entered a plea of not guilty to the charges. The municipal court issued a temporary protection order. On November 30, 2022, the municipal court ordered the matter be bound over to the Stark County Grand Jury.

{¶3} On January 6, 2023, the Stark County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A) and (D)(3), a felony of the fourth degree; one count of disrupting public services, in violation of R.C. 2909.04(A)(1) and (C), a felony of the fourth degree; and violating a protection order, in violation of R.C. 2919.27(A)(1) and (B)(2), a misdemeanor of the first degree. Appellant appeared before the trial court on January 13, 2023, and entered a plea of not guilty to the Indictment.

{¶4} The trial court appointed Attorney Anthony Wise to represent Appellant. The matter was scheduled for trial on February 8, 2023. The trial court conducted a pre-trial hearing on January 30, 2023, and a final pre-trial hearing on February 7, 2023. On February 7, 2023, Attorney Wise filed a motion to withdraw as counsel. Via Judgment Entry filed February 8, 2023, the trial court denied the motion.

{¶5} The matter proceeded to trial as scheduled. The following evidence was adduced at trial:

{¶6} Louisville Police Officer Ellie Smith testified she and Lieutenant Brandon Allensworth responded to 233 Kennedy Street, Louisville, Stark County, Ohio, at approximately 6:20 p.m. on November 17, 2022, after a 911 hang up call. Upon their arrival, the officers spoke with M.F., who indicated everything was fine. Officer Smith stated she and Lt. Allensworth could tell, based upon M.F.'s facial expressions, "that everything was not fine." Transcript of February 8, 2023 Proceedings, Vol. I, at p. 104. The officers entered the residence and separated Appellant and M.F. Office Smith spoke with Appellant who explained he and M.F. had an argument after she looked at his phone and saw text messages she did not like. Appellant denied becoming physical with M.F.

{¶7} After speaking with Appellant, Officer Smith conferred with Lt. Allensworth, who stated M.F. had revealed a different version of the events. The officers determined it was a domestic violence situation. M.F. told the officers Appellant had struck her wrist with a wooden ruler and, as she was attempting to call 911, Appellant grabbed the phone and hung up. Officer Smith noted bruising on M.F.'s wrist and swelling under one of her eyes. M.F. informed the officers Appellant had threatened her with a knife and disclosed she had suicidal ideations. The officers took Appellant into custody and transported him to Louisville Police Department for booking.

{¶8} Lieutenant Brandon Allensworth testified he and Officer Smith made contact with M.F. upon arriving at 233 Kennedy Street. Lt. Allensworth recalled initially M.F. appeared nervous and was reluctant to speak with him and Officer Smith. M.F. ultimately agreed to speak with the officers and invited them into the residence. After Appellant and

M.F. were separated, M.F. revealed she and Appellant had been arguing and Appellant hit her left wrist with a yardstick. Lt. Allensworth noticed significant swelling and bruising on M.F.'s wrist. M.F. further disclosed Appellant had beaten her over the course of three days and had threatened her with a knife that particular day.

{¶9} Lt. Allensworth was familiar with Appellant and M.F. from an incident in July, 2020. After listening to several phone calls placed by Appellant from the jail, Lt. Allensworth stated he recognized both Appellant and M.F.'s voices. Appellant addressed M.F. as his daughter in some of the calls, however, Lt. Allensworth indicated the female voice was that of M.F. The state played five (5) redacted jail calls for the jury. Lt. Allensworth identified Appellant and M.F.'s voices on all five (5) calls.

{¶10} Officer Smith and Lt. Allensworth assisted M.F. in obtaining a temporary protection order. The petition was granted by the Canton Municipal Court on November 18, 2022. When Officer Smith spoke with M.F. on November 18, 2022, M.F. stated she had received calls from Appellant and his mother.

{¶11} Marianne Martin, supervisor for the Canton Municipal Court, identified a certified copy of the November 18, 2022 temporary protection order related to M.F. and Appellant, admitted as State's Exhibit 5 ("TPO"). The TPO ordered Appellant to have no contact with M.F. Martin stated Appellant received, and signed he had received, a copy of the TPO. Martin further noted Appellant waived a hearing on the TPO.

{¶12} Michael Waltz, a corrections officer with the Stark County Sheriff's Office, testified he works in the Inmate Services Department, overseeing, inter alia, visits, phone calls, and the commissary. Deputy Waltz explained how inmates place phone calls from the jail. Inmates utilize a PIN number to make calls. The PIN number is a combination

of an inmate's jail identification number and a four-digit passcode created by the inmate. The phone system used by the jail, the ICS Enforcer, digitally stores phone calls. Calls can be searched by name, phone number, and PIN numbers, as well as by time periods. Deputy Waltz conducted an ICS Enforcer search for the time period between November 18, and December 27, 2022, and found Appellant placed 341 calls or attempted calls to M.F.'s phone number. An ICS Enforcer search for the time period between November 18, 2022, and February 7, 2023, revealed Appellant placed a total of 1,237 calls to M.F.'s phone number.

{¶13} After hearing all the evidence and deliberating, the jury found Appellant not guilty on Counts One and Two, domestic violence and disrupting public services, but found him guilty on Count Three, violating a protection order. The trial court sentenced Appellant to six (6) months in the Stark County Jail.

{¶14} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

I. THE TRIAL COURT VIOLATED APPELLANT'S CONSTITUTIONAL SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM.

II. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PLAY THE JAIL PHONE CALLS BECAUSE THEY WERE NOT PROPERLY AUTHENTICATED.

III. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF

COUNSEL BY DENYING TRIAL COUNT'S MOTION TO WITHDRAW AS COUNSEL OF RECORD.

IV. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW, AS HIS CONVICTION OF VIOLATING A PROTECTION ORDER WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

V. APPELLANT'S CONVICTION OF VIOLATION OF A PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶15}** In his first assignment of error, Appellant contends the trial court violated his right to confront witnesses against him under the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Article I, Section 10.

**{¶16}** Forfeiture by wrongdoing is an equitable exception to a defendant's constitutional right to confront the witnesses against him. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 96 (Citations omitted). Codified under Evid.R. 804(B)(6), the doctrine of forfeiture by wrongdoing permits the state to use hearsay statements of an unavailable witness if the state can show, by a preponderance of the evidence: "(1) the defendant engaged in wrongdoing that caused the witness to be unavailable and (2) one purpose for the wrongdoing was to make the witness unavailable to testify." *Id.* (Citation and internal quotations omitted). See, also, *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84. The state need only show the

defendant's wrongdoing, which caused the witness's unavailability, "was motivated in part by a desire to silence the witness." *Id.*, at ¶¶ 84, 90. A preponderance of the evidence means "the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54.

**{¶17}** Our standard of review of evidentiary rulings implicating the Confrontation Clause is de novo. *McKelton*, supra at ¶ 97 (Citation omitted).

**{¶18}** Outside the presence of the jury, the trial court heard the state's motion for forfeiture by wrongdoing.   The prosecutor advised the trial court of the attempts made to ensure M.F.'s cooperation with the prosecution.   The prosecutor and an investigator presented at M.F.'s home, but no one answered the door.  The prosecutor left a copy of the subpoena along with a note and her business card.  M.F. was subpoenaed for the Grand Jury and the victim witness staff had repeatedly tried to contact her.  The victim advocate left six (6) voicemail messages on M.F.'s phone regarding the Grand Jury, the indictment, the arraignment date, and the trial date.  The victim advocate also sent two letters to M.F.   The trial court listened to jail phone calls Appellant placed to M.F. Appellant objected, arguing there were no threats made, no intimidation, and no coercion.

**{¶19}** In granting the state's motion forfeiture by wrongdoing, the trial court noted:

> The comments I heard yesterday were, in my – I guess I've viewed them differently than defense counsel.  To me, I wrote down, I don't know how many times, they can't convict me if your mother doesn't show up.  And by "mother" it's my understanding that was like the code for the victim so

that they were concerned about the telephone call.  I'm a wreck.  Your mother does this shit on purpose.  And to me other inappropriate comments which to me were an attempt to bully the victim. So I viewed it a little bit differently.

So based on my analysis of 804(B)(6), knowing the fragile emotions this victim was going through, the number of calls, the violation of the protection order, and to describe [Appellant] on the tape was just simply belligerent and it was a profanity-laced telephone call of 16 minutes.  So I'll allow it to come in, okay?

Transcript of February 8, 2023 Proceedings, Vol. I at pp. 169-170.

**{¶20}** Upon review of the evidence presented by the state in support of its motion for forfeiture by wrongdoing, we conclude the evidence presented, the accompanying surrounding facts and circumstances, and the available rational inferences drawn therefrom, demonstrate, by a preponderance of the evidence, Appellant engaged in wrongdoing and such wrongdoing caused M.F. to be unavailable and such wrongdoing was done with the purpose of preventing M.F. from testifying.  Accordingly, we find the trial court did not violate Appellant's constitutional right to confront witnesses against him.

**{¶21}** Appellant's first assignment of error is overruled.

II

**{¶22}** In his second assignment of error, Appellant submits the trial court erred in allowing the state to play the jail phone calls as such were not properly authenticated.

**{¶23}** "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 5th Dist., 2021-Ohio-501, 168 N.E.3d 86, ¶ 49 (Citation omitted). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "When applying the abuse-of-discretion standard, a reviewing court must not substitute its judgment for that of the trial court." *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16.

**{¶24}** Pursuant to Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). "In accordance with Evid.R. 901(B)(1), the requirement of authentication or identification can be satisfied by testimony of a witness with knowledge 'that a matter is what it is claimed to be.' " *Halcomb v. Greenwood*, 12th Dist. No. CA2018-03-008, 2019-Ohio-194, ¶ 53. "Authentication or identification can also be satisfied through voice identification under Evid.R. 901(B)(5) 'whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.' " *Id.*

**{¶25}** "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Lewis*, 5th Dist. Delaware No. 21 CAA 03 0017, 2022-Ohio-1850, ¶ 30 (Citation omitted). "The proponent of the evidence

need show only a reasonable likelihood of authenticity." *Id.* (Citation omitted). "Circumstantial, as well as direct, evidence may be used to show authenticity." *Id.* (Citation omitted). In other words, "[t]he authentication requirement contemplated by Evid.R. 901(A) invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be." *Weisbecker v. Weisbecker*, 12th Dist. Butler No. CA2005-10-421, 2006-Ohio-5840, ¶ 22 (Citation omitted).

**{¶26}** At trial, the state established the recordings were what they were purported to be based upon the standard procedures of the correctional facility. Deputy Waltz testified as to the workings of the jail's automatic recording system, the ICS Enforcer, and how to retrieve specific recordings. Deputy Waltz conducted an ICS Enforcer search for the time period between November 18, 2022, and February 7, 2023, which revealed Appellant placed a total of 1,237 calls to M.F.'s phone number. Deputy Waltz verified State's Exhibit 6, a printed log of the jail calls which were kept in the ordinary course of business. In addition, Lt. Allensworth identified the individuals on the call as Appellant and M.F. Lt. Allensworth was familiar with Appellant's and M.F.'s voices as he had spoken with both of them at their residence on November 17, 2022, as well as during an encounter in July, 2021. Lt. Allensworth also listened to a number of the recordings of the jail calls prior to trial. At trial, Lt. Allensworth listened to the redacted jail calls during his testimony and identified Appellant and M.F. as the speakers on the calls.

**{¶27}** We have listened to the five (5) jail calls admitted into evidence at trial. All of the calls were placed to the same cell phone number. We can infer the number was associated with a cell phone as the female who answered the calls was getting onto a

bus on one occasion and was at a bank on another occasion. Such activities could not occur with a landline. On February 3, 2023, Appellant called while the female was at a bank. Appellant asked to speak to the teller. During the exchange between Appellant and the teller, Appellant referred to the female as "his wife" and "M.F." The female voice on all of the calls belongs to the same individual.

**{¶28}** Based upon the foregoing, we find the trial court did not abuse its discretion in determining the state sufficiently authenticated and identified the female voice on the receiving end of the jail calls as belonging to M.F.

**{¶29}** Appellant's second assignment of error if overruled.

### III

**{¶30}** In his third assignment of error, Appellant argues the trial court violated his constitutional right to the effective assistance of counsel by denying trial counsel's motion to withdraw.

**{¶31}** "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v. Eberhardt*, 5th Dist. Richland No. 2019CA0111, 2020-Ohio-4124, ¶ 38 (Citation omitted). "The trial court may deny the request to substitute counsel if the complaint is unreasonable." *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), syllabus. The trial court's decision is reviewed under an abuse-of-discretion standard. *State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999). "An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence." *Eberhardt*, supra at ¶ 39 (Citations omitted).

**{¶32}** "The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record." *State v. Carter*, 128 Ohio App.3d 419, 423, 715 N.E.2d 223 (1998) (Citations omitted). "The inquiry may be brief and minimal, but it must be made." *Id.* (Citations omitted). "Even that limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further." *Id.* (Citation omitted). "Failure to inquire into specific allegations constitutes an error as a matter of law." *Id.*

**{¶33}** The trial court conducted a pre-trial hearing on January 30, 2023. The hearing commenced with the state advising the trial court it was "the State's understanding [Appellant] will withdraw his formal plea of not guilty and enter a plea of guilty to the indictment." Transcript of January 30, 2023 Proceedings at p. 3. Attorney Anthony Wise, counsel for Appellant, responded he had spoken with Appellant and conveyed the state's offer, but Appellant intended to maintain his plea of not guilty and proceed to trial. Attorney Wise added, "I would note for the record, Your Honor, that [Appellant] has accused me of sounding like a prosecutor and not thinking I'm working for him in this case, Your Honor. I just want to note that for the record. *Id* at pp. 3-4. Thereafter, the trial court addressed Appellant.

THE COURT: *** Mr. Patterson, how are you today? Okay?

[APPELLANT]: I'm doing – I was doing pretty – pretty well until that statement. And – and now that I have that statement, I would like to have a – an ineffective counsel. And –

* * *

THE COURT: You have one, I think, of the best trial lawyers here in town. Okay? Now, you can hire whoever you want to try your case. But, I mean, you – you can't dictate to the Court who gets to try your case.

Now, your counsel has a tough job, because he has to tell it like it is. And you may not like some of the things that he says. And you make [sic] like some of the things that he said.

* * *

But what I'm telling you is for him to get them to come here at this point, he's done a heck of a job. So don't take anything out on your lawyer, he's doing his job. Do you understand what I'm saying?

[APPELLANT]: Yes, I do, sir.

THE COURT: Okay. And so, are you asking the Court to set a trial date?

[APPELLANT]: Yes, I would like that. And also, as I state before ineffective counsel. And – and the – the – the criminal charge of domestic violence does not apply to me, sir. Because I reside in East Cleveland, Ohio.

* * *

[APPELLANT]: I been out here visiting my girlfriend.

THE COURT: Okay. Well, you may be right on that. I'm not saying you're wrong. But what I'm saying to you is – simply is this. There's no ineffective assistance of counsel. He's done what he should be doing. And so that's the reality.

\* \* \*

\* \* \*

[APPELLANT]: Can I you [sic] ask you what – what are my charges, sir?

THE COURT: Your charges? Yeah. I'll be happy to go over them with you. You have a domestic violence, F4. Disrupting public service, F4. And violating a protection order, misdemeanor of the first degree.

\* \* \*

THE COURT: \* \* \* your attorney did a really good job of getting an offer of probation because it carries 36 months in prison. And I'm not forcing you either way to do anything. I wasn't there.

But what I'm saying to you, he's worked very hard on the case. And he did a good job to get the State to get to this point.

On the other hand, you have a constitutional right to have a jury trial.

\* \* \*

*Id.* at pp. 4-7, 9-10.

**{¶34}** We find Appellant's statement to the trial court he did not believe defense counsel was representing him properly did not establish good cause for the appointment

of new counsel. We further find Appellant failed to allege facts which, if true, would require the appointment of new counsel and the trial court had no duty to inquire further than it did. See, *State v. Ervin*, 5th Dist. Stark No. 2000CA00297, 2001 WL 1512190.

**{¶35}** Appellant's third assignment of error is overruled.

IV, V

**{¶36}** We elect to address Appellant's fourth and fifth assignments of error together. In his fourth assignment of error, Appellant argues his conviction was not supported by sufficient evidence; therefore, the trial court erred in overruling his Crim. R. 29 motion to dismiss. In his fifth assignment of error, Appellant challenges his conviction as against the manifest weight of the evidence.

**{¶37}** A Crim. R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial. *State v. Blue,* 5th Dist. Stark No. 2001CA00250, 2002–Ohio–351 (Citation omitted); *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996). Crim. R. 29(A) allows a trial court to enter a judgment of acquittal when the State's evidence is insufficient to sustain a conviction. A trial court should not sustain a Crim. R. 29 motion for acquittal unless, after viewing the evidence in a light most favorable to the State, the court finds no rational finder of fact could find the essential elements of the charge proven beyond a reasonable doubt. *State v. Franklin*, 5th Dist. Stark No. 2007–CA–00022, 2007–Ohio–4649 at ¶ 12 (Citation omitted).

**{¶38}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶39} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387 (Citation and internal quotations omitted).

{¶40} Appellant was convicted of one count of violating a protection order, in violation of R.C. 2919.27(A)(1), which provides:


(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code.


{¶41} Appellant contends "the evidence the State presented was insufficient to demonstrate beyond a reasonable doubt that the party Appellant spoke with on the recorded jail phone calls was [M.F.]."  Brief of Appellant at p. 17.  Appellant continues, "The State knew the number to which the calls were made, but never provided

documentation regarding to whom the number belonged." *Id.* Appellant submits Lt. Allensworth's ability to identify M.F.'s voice was "dubious." Appellant advances the same argument in support of his assertion his conviction was against the manifest weight of the evidence. We disagree.

**{¶42}** At trial, Marianne Martin, supervisor for the Canton Municipal Court, identified a certified copy of the T.P.O. related to M.F. and Appellant. The TPO, which was issued on November 18, 2022, ordered Appellant to have no contact with M.F. Martin stated Appellant received, and signed he had received, a copy of the TPO. Deputy Waltz testified he conducted an ICS Enforcer search for the time period between November 18, 2022, and February 7, 2023, which revealed Appellant placed a total of 1,237 calls or attempted calls to M.F.'s phone number. Deputy Waltz verified State's Exhibit 6, a printed log of the jail calls which were kept in the ordinary course of business. In addition, Lt. Allensworth identified the individuals on the jail calls as Appellant and M.F. Lt. Allensworth was familiar with Appellant's and M.F.'s voices as he had spoken with both of them at their residence on November 17, 2022, as well as during an encounter in July, 2021.

**{¶43}** Upon review of the evidence, we cannot conclude the trier of fact clearly lost its way and created a manifest miscarriage of justice nor can we conclude there was insufficient evidence to support Appellant's conviction. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only

portions of it as true. *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 2942992.  The jury clearly believed Deputy Waltz's testimony as to the extraordinary amount of calls/attempted calls to a phone number, which he indicated belonged to M.F. as well as Lt. Allensworth's voice identifications on the recorded jail calls.

**{¶44}** Based upon the foregoing, we find Appellant's conviction was based upon sufficient evidence and was not against the manifest weight of the evidence.

**{¶45}** Appellant's fourth and fifth assignments of error are overruled.

**{¶46}** The judgment of the Stark County Court of Common Pleas is affirmed.


By: Hoffman, J.
Gwin, P.J.  and
Baldwin, J. concur