[Cite as *State v. Lewis*, 2026-Ohio-1340.]

IN THE FIFTH DISTRICT COURT OF APPEALS
DELAWARE COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 25 CAA 09 0085 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 20 CR I 08 0555 |
| KENNETH LEWIS, | Judgment:  Affirmed |
| Defendant - Appellant | Date of Judgment Entry: April 10, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; Kevin W. Popham, Judges

**APPEARANCES:** MELISSA A. SCHIFFEL, Prosecuting Attorney, KATHERYN L. MUNGER, Assistant Prosecuting Attorney, for Plaintiff-Appellee; KENNETH LEWIS #A785-946, Pro Se, for Defendant-Appellant.

*Baldwin, J.*

{¶1}   The appellant, Kenneth Lewis, appeals the trial court's decision denying his postconviction application for DNA testing. For the reasons that follow, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   On or about August 28, 2020, the appellant entered Cashland, a retail pawnshop, held two employees at gunpoint, and robbed the store. He was later indicted on one count of aggravated robbery and two counts of kidnapping. He pleaded not guilty, and the matter proceeded to a jury trial at which the following evidence was admitted.

{¶3}   The two Cashland employees testified regarding the robbery and the fact that the perpetrator held them at gunpoint, noting that the perpetrator wore a grey long-

sleeved Carhartt shirt. Video footage from Cashland's surveillance cameras was also admitted. An employee from a nearby CVS store also testified regarding the authenticity of video footage from CVS surveillance cameras showing the appellant entering the CVS store following the robbery, taking off a dark long-sleeved shirt, placing it in a bag, and then leaving the store. In addition, a nearby resident had surveillance cameras on his property that captured the appellant, and testified regarding said surveillance video footage. Further, a police detective who was parked nearby in an unmarked vehicle testified that he observed the appellant discard the long-sleeved shirt after leaving CVS; the detective retrieved the shirt, and observed the appellant get into a vehicle and leave the scene. The detective recorded the vehicle's license plate number, which was traced back to the appellant. In addition, a BCI forensic analyst who conducted DNA testing on the dark long-sleeved shirt recovered after the robbery testified regarding her findings, and the fact that the appellant's DNA was found on the long-sleeved shirt; in fact, she testified that the appellant was a major contributor of the DNA found on the shirt. Moreover, when the appellant was taken into custody he had several thousand dollars in cash, gold chains in a bag, and clothing that was consistent with that worn by the perpetrator. Finally, an inmate who had been in jail with the appellant testified that the appellant described to him in detail how he robbed the Cashland pawnshop.

{¶4} The jury convicted the appellant on all counts based upon said evidence. The appellant appealed his conviction to this Court, which affirmed in *State v. Lewis,* 2022-Ohio-1850 (5th Dist.), *motion for leave to file delayed appeal denied*, 2023-Ohio-3670.

{¶5} The appellant thereafter filed numerous motions for postconviction relief. In one such motion the appellant asked the trial court to vacate the judgment entry of

sentence; the trial court found that the claims raised by the appellant were raised or could have been raised in his direct appeal, were therefore barred by res judicata, and denied his motion. The appellant appealed that decision, raising eight assignments of error. This Court affirmed that decision in *State v. Lewis,* 2024-Ohio-5271 (5th Dist.), *discretionary appeal not allowed, State v. Lewis,* 2025-Ohio-481. The appellant filed further postconviction motions, all of which have been denied by the trial court, affirmed by this Court on appeal, and not accepted for review by the Ohio Supreme Court.

{¶6} The appellant's most recent postconviction application was filed on June 17, 2025, in which the appellant requested DNA testing of the long-sleeved shirt, asserting that "a DNA test with more accuracy or from an independent expert with a different opinion and analysis would prove that it was not [the appellant's] DNA on the shirt in which would change [sic] the outcome of the case." The trial court issued a Judgment Entry on August 26, 2025, denying the appellant's application for DNA testing. The appellant filed a timely appeal in which he sets forth the following three assignments of error:

{¶7} "I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S APPLICATION FOR POSTCONVICTION TESTING ON THE GROUNDS THAT DNA EXCLUSION RESULTS WOULD NOT BE OUTCOME DETERMINATIVE."

{¶8} "II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S APPLICATION FOR POSTCONVICTION DNA TESTING ON GROUNDS THAT APPPELLANT FAILED TO OFFER ANY EVIDENCE THAT THE PRIOR DNA TEST WAS NOT DEFINITIVE."

**{¶9}** "III. WHETHER THE TRIAL COURT SHOULD HAVE CONSIDER [SIC] THE POSSIBILITY THAT A COMPARISON OF POSTCONVICTION DNA TEST RESULTS WILL IDENTIFY A PERSON OTHER THAN THAN [SIC] THE ALLEGED OFFENDER."

**{¶10}** The appellant argues that the trial court erred in denying his application for DNA testing. We disagree.

## STANDARD OF REVIEW

**{¶11}** The standard of review for cases involving the denial of applications for postconviction DNA testing was addressed by this Court in *State v. Jenkins*, 2023-Ohio-4758 (5th Dist.):

> R.C. 2953.74 governs prior tests and applications for postconviction DNA testing. Under subsection (A), a trial court has discretion to accept or reject an application for DNA testing. See *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, syllabus. Therefore, absent an abuse of discretion, we will not reverse the trial court's decision. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (1983).

*Id.* at ¶11.

## ANALYSIS

**{¶12}** The appellant's assignments of error are interrelated, and as such we shall address them together.

**{¶13}** A request for postconviction DNA testing is governed by R.C. 2953.71 through 2953.84. R.C. 2953.74 outlines the circumstances in which a trial court may consider an application for postconviction DNA testing, and provides in pertinent part:

(A)  If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application. If an eligible offender files an application for DNA testing and a prior inconclusive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall review the application and has the discretion, on a case-by-case basis, to either accept or reject the application. The court may direct a testing authority to provide the court with information that the court may use in determining whether prior DNA test results were definitive or inconclusive and whether to accept or reject an application in relation to which there were prior inconclusive DNA test results.

(B)  If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:

(1)  The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and

upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

(2)     The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

(C)     If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if all of the following apply:

(1)     The court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the offender is an eligible offender and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the offender can be compared still exists at that point in time.

(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

(a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample.

(b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (C)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c) The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of

such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5)    The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender.

(6)    The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

(D)    If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court, in determining whether the "outcome determinative" criterion described in divisions (B)(1) and (2) of this section has been satisfied, shall consider all available admissible evidence related to the subject offender's case.

R.C. 2953.71(L) defines "outcome determinative" as follows:

"Outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in

the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense ....

R.C. 2953.74(U) defines "definitive DNA test" as follows:

"Definitive DNA test" means a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also clearly establishes whether or not the biological material is that of the eligible offender. A prior DNA test is not definitive if the eligible offender proves by a preponderance of the evidence that because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover. Prior testing may have been a prior "definitive DNA test" as to some biological evidence but may not have been a prior "definitive DNA test" as to other biological evidence.

**{¶14}** In its August 26, 2025, Judgment Entry Denying Defendant's Application for DNA Testing, the trial court analyzed each statutory condition. The court first addressed the fact that a definitive DNA test had been previously conducted, and the appellant had failed to provide evidence that the prior DNA test was not definitive. In fact, the DNA test conducted by and testified to by the BCI analyst clearly established that biological material from the shirt was that of the appellant and was therefore definitive. The trial court thus determined that it was required by statute to reject the appellant's application. We find that the trial court did not act unreasonably, arbitrarily, or

unconscionably when it rejected the appellant's application, and therefore did not abuse its discretion.

{¶15} Furthermore, the trial court determined that the appellant failed to show that the results of a new DNA test would have been outcome determinative. That is, the appellant failed to establish that if new results were presented at trial "there is a strong probability that no reasonable factfinder would have found [the appellant] guilty." The testimony of the BCI analyst established that the appellant was the major contributor of DNA on the shirt, and the presence of his DNA "corroborates the other strong evidence presented in the case that [the appellant] was the perpetrator of the offense."

{¶16} The "other strong evidence" presented in the case that supports the appellant's conviction includes, but is not limited to, the following: (1) Cashland's surveillance camera video footage which captured the perpetrator wearing a dark long-sleeved shirt, later identified as the appellant's shirt and on which the appellant's DNA was discovered; (2) the testimony of the Cashland employees who were robbed at gunpoint; (3) evidence that the appellant fled Cashland on foot and entered a nearby CVS store located one block from Cashland, where the CVS surveillance camera captured video footage of the appellant in his dark long-sleeved shirt carrying a dark shopping bag, walking to the back of the store, removing his long-sleeved shirt, placing it in the dark shopping bag, and leaving the store; and, (4) testimony of the appellant's cellmate while in jail, who testified that the appellant described to him in detail how he robbed the Cashland pawn shop.

{¶17} We find that the trial court did not act unreasonably, arbitrarily, or unconscionably when it determined there was strong corroborative evidence vitiating the appellant's arguments. A law enforcement officer observed the appellant discarding the

shirt; the officer retrieved the shirt and recorded the appellant's license plate as the appellant left the scene, further corroborating the appellant's guilt. The testimony of the BCI analyst established that the appellant was the major contributor of the DNA found on the shirt. Finally, the testimony from the appellant's fellow jail inmate regarding how the appellant gave the fellow inmate a detailed description of how the appellant committed the robbery further corroborated the evidence submitted against the appellant during trial. Consequently, the trial court did not act unreasonably, arbitrarily, or unconscionably when it found that the appellant failed to prove that there was a strong probability that the jury would not find him guilty if a new DNA test were permitted.

{¶18} There was a prior definitive DNA test conducted herein regarding the DNA evidence found on the long-sleeved shirt that the appellant seeks to have tested, and as such the trial court properly rejected the appellant's application for DNA testing. Furthermore, the appellant failed to establish that a second DNA test would be outcome determinative, or that it would result in a strong probability that no reasonable factfinder would find the appellant guilty. Thus, the trial court did not abuse its discretion, and properly denied the appellant's application.  Accordingly, the appellant's assignments of error are denied.

## CONCLUSION

**{¶19}** Based upon the foregoing, we find the appellant's assignments of error numbers one, two, and three to be without merit. Accordingly, we overrule appellant's assignments of error and affirm the decision of the Delaware County Court of Common Pleas.

**{¶20}** Costs to appellant.

By: Baldwin, J.

King, P.J. and

Popham, J. concur.