[Cite as *State v. Stephen*, 2025-Ohio-693.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Andrew J. King, J. |
| -vs- | |
| CORDERO M. STEPHEN | Case No. 2024CA00047 |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of
Common Pleas, Case No. 2023CR1684

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 27, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE L. STONE                              DONOVAN R. HILL
Prosecuting Attorney                   122 Market Avenue, North
Stark County, Ohio                      DeWalt Building, Suite 101
                                        Canton, Ohio 44702
VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South, Suite 510
Canton, Ohio 44702-1413

*Hoffman, J.*

{¶1} Defendant-appellant Cordero Stephen appeals the judgment entered by the Stark County Common Pleas Court convicting him following jury trial of felonious assault (R.C. 2903.11(A)(D)(1)(a)) with a firearm specification (R.C. 2941.145(A)) and tampering with evidence (R.C. 2921.12) with a firearm specification, and after bench trial of a repeat violent offender specification attached to the felonious assault charge (R.C. 2941.149(A)) and having weapons under disability (R.C. 2923.13(A)(2)(B)) with a firearm specification. The trial court sentenced him to an aggregate term of incarceration of 10-12 years.

STATEMENT OF THE FACTS AND CASE

{¶2} On, July 22, 2023, the victim's brother was speaking to her on the phone while she was arguing with Appellant, who was her boyfriend. The victim's brother heard the victim say "don't shoot" to Appellant. Tr. 210. The victim's brother heard a gunshot, and called 9-1-1.

{¶3} Multiple Canton police officers responded to the scene. Officers noted a blood droplet trail leading to an upstairs apartment, and blood also leading to apartment two on the lower level. Officers knocked on the door of apartment two, but no one answered. Officers forced entry into the apartment, where they spoke to a woman in a wheelchair. The woman, who was Appellant's cousin, lived in the apartment with Appellant and the victim.

{¶4} Officers found Appellant hiding behind a locked bedroom door, and the victim hiding in the closet of the bedroom. Appellant was arrested. The victim was transported to the hospital for treatment of a gash over her left eye. Officers found a gun in Appellant's cousin's bedroom, underneath the mattress. The gun was operable.

{¶5}   Appellant was interviewed by police.  He admitted he put the gun under his cousin's mattress, and admitted to possessing the gun while outside the building.  Swabs of Appellant's hands tested positive for gunshot residue.

{¶6}   Appellant made phone calls from the Stark County Jail after his arrest, which were recorded.  In one call, Appellant stated, "I wish I didn't do it."  In another, he stated, "I hit her in the head with a gun."  Appellant stated in one call it had to be his cousin who told police where the gun was, because she was the only one who saw him put it in her room.

{¶7}   While at the hospital, the victim told healthcare providers Appellant physically assaulted her and she maced him in the face for protection.  The victim stated Appellant went downstairs, and she heard two gunshots.  He ran back up the stairs and struck her in the face with a gun.  She told medical personnel she woke up a short while later bleeding from a cut above her eye, and Appellant gave her a diaper to put on the wound.

{¶8}   Appellant was indicted by the Stark County Grand Jury with one count of felonious assault with a repeat violent offender specification, one count of tampering with evidence, and one count of having weapons under disability.

{¶9}   The parties appeared before the trial court on November 8, 2023, at which time a plea agreement was presented to the court.  Appellant wanted additional time to consider the agreement.  The trial court gave Appellant one week, until November 15, 2023, to discuss the plea with his family.

{¶10}  On November 30, 2023, the State filed a superseding indictment adding a three-year firearm specification to the charges of felonious assault and having weapons

under disability, and a one-year firearm specification to the charge of tampering with evidence.

{¶11} Appellant entered a plea of not guilty to the superseding indictment on December 5, 2023. On the same date he filed a motion to dismiss the superseding indictment. At his arraignment on the superseding indictment, the State represented the plea offer presented on November 8 had been rejected. Appellant represented the offer had been accepted and Appellant had signed the plea form, but later learned the offer had been withdrawn.

{¶12} The parties appeared before the court on December 21, 2023, for a hearing. Appellant rejected the State's plea offer on the superseding indictment, which included the same sentencing recommendation as the offer presented November 8, 2023, on the earlier indictment. The State represented to the trial court despite Appellant's claim he had accepted the State's earlier offer, the "agreement" Appellant signed had been altered by counsel.

{¶13} On March 13 and 15, 2024, Appellant filed a motion to enforce the negotiated plea agreement, attaching the agreement he signed November 15, 2024. The "agreement" included numerous handwritten changes which were initialed only by Appellant and his attorney. The trial court overruled the motion, stating there was no meeting of the minds so as to enforce a negotiated plea.

{¶14} The case proceeded to trial. The charges of felonious assault and tampering with evidence, with the attached firearm specifications, were tried to a jury. The jury returned verdicts of guilty. In a separate hearing, the repeat violent offender specification and weapons under disability charge, with its accompanying firearm

specification, were tried to the court. The trial court found Appellant guilty. The trial court convicted Appellant on all counts, and sentenced him to an aggregate term of incarceration of 10-12 years.

{¶15} It is from the April 3, 2024 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO ENFORCE THE PLEA AGREEMENT ENTERED ON THE RECORD.

II. THE STATE'S WITHDRAWAL OF THE PLEA OFFER AND SUBSEQUENT FILING OF A SUPERSEDING INDICTMENT WAS VINDICTIVE AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS.

III. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PLAY THE JAIL PHONE CALLS BECAUSE THEY WERE NOT PROPERLY AUTHENTICATED.

IV. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

V. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

{¶16} In his first assignment of error, Appellant argues the trial court erred in overruling his motion to enforce the plea agreement. We disagree.

**{¶17}** "A plea bargain itself is contractual in nature and subject to contract-law standards." *State v. Butts*, 112 Ohio App.3d 683, 686, (8th Dist. 1996). A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and consideration. *State v. Robinson,* 2004-Ohio-740, ¶ 12 (8th Dist.). A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Id.*

**{¶18}** In the instant case, the first time the plea agreement signed by Appellant appears in the record before this Court is March 13, 2024, months after the deadline of November 15, 2023, given by the trial court for consideration of the State's offer. Although this agreement bears a signature date of November 15, 2023, the document itself contains numerous handwritten changes, initialed by Appellant and his counsel, but not by the prosecutor. The altered agreement is not signed by the prosecutor or by the trial court. We find the trial court did not err in finding no meeting of the minds existed on the plea agreement sufficient to render it enforceable as a contract.

**{¶19}** The first assignment of error is overruled.

II.

**{¶20}** In his second assignment of error, Appellant argues the State's withdrawal of the plea offer and subsequent filing of a superseding indictment was vindictive and violated due process. We disagree.

**{¶21}** The Due Process Clause guarantees against prosecutorial vindictiveness, and the State may not constitutionally retaliate against a defendant for exercising his

rights. *Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974). Appellant concedes in the pretrial context, as in the instant case, there is no presumption of vindictiveness, and therefore he must show actual vindictiveness. *See, e.g., State v. Nash*, 2001WL520973 (5th Dist.), *citing State v. Semenchuk*, 122 Ohio App.3d 30, 38 (8th Dist. 1997) (in pretrial setting, prosecutor is free to seek indictment on whatever charges the evidence can support, and no presumption of vindictiveness will attach if the defendant was clearly subject to those charges at the outset).

{¶22} While Appellant argues the State refused to move forward with the plea offer after he produced a signed agreement on November 15, 2023, the deadline set by the trial court, the record demonstrates the signed plea agreement was covered in handwritten changes initialed only by Appellant and his counsel, and therefore did not represent a meeting of the minds on the terms of the agreement. The evidence demonstrated support for the firearm specifications existed at the time the original charges were filed, as Appellant admitted to police he handled the firearm. Further, after the superseding indictment, the State continued to offer a plea agreement with the same recommended sentence as originally offered, and offered dismissal of the added firearm specifications as a part of the plea agreement. We find Appellant has not demonstrated actual vindictiveness on the part of the prosecutor.

{¶23} The second assignment of error is overruled.

III.

{¶24} In his third assignment of error, Appellant argues the trial court erred in admitting the recordings of his telephone calls from the jail because they were not properly authenticated. We disagree.

**{¶25}** Appellant did not object to the admission of the evidence on the basis the calls were not properly authenticated; in fact, when raising his other objections to the calls, counsel for Appellant stated the calls were authenticated. Tr. 329. Because Appellant failed to object to the authentication of the calls, we must find plain error in order to reverse. To establish plain error, Appellant must show an error occurred, the error was obvious, and there is a reasonable probability the error resulted in prejudice, meaning the error affected the outcome of the trial. *State v. McAlpin,* 2022-Ohio-1567, ¶66, *citing State v. Rogers*, 2015-Ohio-2459, ¶ 22.

**{¶26}** "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *State v. Romy*, 2021-Ohio-501, ¶ 49 (Citation omitted) (5th Dist.). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). "When applying the abuse-of-discretion standard, a reviewing court must not substitute its judgment for that of the trial court." *In re E.L.C.*, 2015-Ohio-2220, ¶ 16 (12th Dist.).

**{¶27}** Pursuant to Evid. R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). "In accordance with Evid. R. 901(B)(1), the requirement of authentication or identification can be satisfied by testimony of a witness with knowledge 'that a matter is

what it is claimed to be.'" *Halcomb v. Greenwood*, 2019-Ohio-194, ¶ 53. (12th Dist.). "Authentication or identification can also be satisfied through voice identification under Evid. R. 901(B)(5) 'whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.'" *Id.*

{¶28} "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Lewis,* 2022-Ohio-1850, ¶ 30 (Citation omitted) (5th Dist.). "The proponent of the evidence need show only a reasonable likelihood of authenticity." *Id.* (Citation omitted). "Circumstantial, as well as direct, evidence may be used to show authenticity." *Id.* (Citation omitted). In other words, "[t]he authentication requirement contemplated by Evid. R. 901(A) invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be." *Weisbecker v. Weisbecker,* 2006-Ohio-5840, ¶ 22 (Citation omitted) (12th Dist.).

{¶29} Michael Waltz, a corrections officer at the jail, testified Appellant's PIN number was used to place the calls. Officer Waltz also testified for verification purposes, Appellant was required to state his name and say "United States of America" before Appellant could place the calls. We find Officer Waltz's testimony was sufficient to meet the low threshold requirement for authenticity, and Appellant has not demonstrated plain error. Furthermore, the content of the recorded calls was related to the incident giving rise to the charges and demonstrated knowledge of information unique to Appellant.

{¶30} The third assignment of error is overruled.

IV. & V.

**{¶31}** In his fourth and fifth assignments of error, Appellant argues his convictions of felonious assault, tampering with evidence, and having weapons under disability, with the attendant firearm specifications, are against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.

**{¶32}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶33}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶34}** Appellant was convicted of felonious assault in violation of R.C. 2903.11(A):

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶35}** The firearm specification alleged Appellant had a firearm on or about his person or under his control while committing the offense, and displayed the firearm, brandished the firearm, indicated he possessed the firearm, or used it to facilitate the offense.

**{¶36}** The victim did not testify at trial. However, her redacted health records from the incident were admitted into evidence. The victim told healthcare providers she was involved in a verbal and physical altercation with her boyfriend. She maced him in the face. She reported her boyfriend went downstairs, and she heard two gunshots. He then ran back upstairs with a gun and struck her in the face. Photographs were admitted showing the victim had a large gash above her eye. The State presented evidence the gash required x-rays and stitches. The victim's brother testified he was on the phone with the victim while the victim was in an altercation with Appellant, who was her boyfriend. He heard the victim say "don't shoot" to Appellant. Tr. 210. He heard two gunshots and called 911. In one of the jail calls admitted into evidence, Appellant admitted he hit the victim with a gun.

**{¶37}** We find the evidence presented by the State was sufficient to convict Appellant of felonious assault with a firearm specification, and the conviction is not against the manifest weight of the evidence.

**{¶38}** As to his convictions of tampering with evidence and having a weapon under disability, Appellant argues there was no evidence he handled a gun or possessed the gun found under his cousin's mattress.[1]

---

[1] Appellant does not challenge the fact he was under a disability at the time of the offense.

**{¶39}** Appellant was convicted following jury trial of tampering with evidence, with a firearm specification, in violation of R.C. 2921.12:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

**{¶40}** Following bench trial in a separate hearing, Appellant was convicted of having a weapon under a disability in violation of R.C. 2923.13, which prevented him from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance as a result of his prior conviction.

**{¶41}** Appellant admitted to police he put the gun under his cousin's mattress. In statements to medical personnel, the victim stated Appellant took the gun downstairs, and when he came back upstairs, he was in possession of the gun. Appellant's hands tested positive for gunshot residue. Further, in the jail calls, Appellant admitted to hitting the victim with the gun. We find the judgments convicting Appellant of tampering with

evidence and having a weapon under disability, with the accompanying firearm specifications, are supported by sufficient evidence and are not against the manifest weight of the evidence.

**{¶42}** The fourth and fifth assignments of error are overruled.

**{¶43}** The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, J.
Baldwin, P.J.
King, J.  concur