[Cite as *Krista v. Thompson*, 2025-Ohio-5566.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

CRIS KRISTA,[1]                          :
                                         :
        Plaintiff-Appellant,             :        Case No. 25CA1
                                         :
        v.                               :
                                         :
TERRY THOMPSON,                          :        <u>DECISION AND JUDGMENT</u>
                                         :        <u>ENTRY</u>
        Defendant-Appellee.              :
                                         :        **RELEASED 12/10/25**
_____

<u>APPEARANCES:</u>

Amanda R. Morris, Morris Law Firm, LLC, Lancaster, Ohio for Plaintiff-Appellant.

John Lavelle, Lavelle & Rittenhouse, Athens, Ohio for Defendants-Appellees.[2]

_____

Hess, J.

{¶1}    Cris Krista appeals the judgment following a bench trial of the Athens County Court of Common Pleas dismissing Krista's claims due to failure of proof and granting a declaratory judgment to Thompson finding that he is not in breach of contract and that Krista is not entitled to any further relief. Krista raises four assignments of error: (1) the trial court erred in allowing his counsel to withdraw the morning of trial; (2) the trial court erred by dismissing Krista's claims without proper notice; (3) the trial court lacked jurisdiction to render a declaratory judgment because certain individuals were not joined as parties; and (4) the trial court's judgment granting Thompson's declaratory judgment lacked sufficient evidence.

---

[1] Appellant's name has appeared in various forms throughout the record as Hisham Cris Kresta, Hesham Krista, Cris D. Crista, and Chris Crista. We use the name and spelling that appears on the trial court's entry.
[2] Karen Thompson was added to the lawsuit by amended complaint and is represented along with her husband in this appeal.

{¶2}  The Thompsons argue that Krista's argument concerning his trial counsel's withdrawal ignores the fact that Krista's trial counsel appeared for trial as scheduled that morning and that it was Krista himself who failed to show up or bring any documents to support his claims. Krista's trial counsel's statements in his motion to withdraw on the morning of trial showed that Krista had a history of failing to respond to, provide documents to, or meet with his counsel for several months before the trial date. The Thompsons also argue that the trial court complied with any notice requirements under Civ.R. 41(B) because Krista's trial counsel and the trial court discussed at the start of the trial the ramifications of Krista's failure to show up that morning and the trial court provided adequate notice to Krista's trial counsel that Krista's failure to appear and present evidence would result in the dismissal of his claims. Next, the Thompsons argue that Krista's contentions that the trial court lacked jurisdiction to grant a declaratory judgment to the Thompsons is based on a false premise – he incorrectly believes that Karen Thompson was not made a party when, in fact, she was. The Thompsons contend that the record shows that the trial court granted Krista's motion to file an amended complaint to add Karen Thompson, modified the case management schedule to reflect this at Krista's request, and that Karen Thompson subsequently appeared and filed an answer. Finally, the Thompsons argue that Krista has waived any evidentiary objections related to their proof of their counterclaim by failing to make any objections during the trial.

{¶3}  We find that the trial court did not abuse its discretion in allowing Krista's counsel to withdraw or in dismissing his claims due to his failure to present

proof to support them. We also find that the trial court had jurisdiction to issue a declaratory judgment and that the Thompsons presented sufficient evidence to support the trial court's judgment. We overrule Krista's assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶4}** In November 2019, Cris Krista and Terry Thompson entered into a real estate contract in which Krista would purchase two tracts of land in Hocking County from Thompson for $575,000.00. Krista was to pay $1,000 in equal monthly installments beginning December 1, 2019, with the full balance of the purchase price due no later than December 1, 2021. For reasons the parties dispute, the full balance was not paid by Krista on December 1, 2021. On December 9, 2021, Thompson's attorney sent a letter to Krista's attorney informing Krista that Thompson was declaring the contract "expired and of no further force or effect." The letter stated that Thompson was unable to extend the closing date by more than the one-week extension previously granted to Krista on December 1, 2021.

**{¶5}** Eight days later, on December 17, 2021, Krista filed a complaint against Thompson for specific performance, breach of contract, and damages. Thompson answered and filed a counterclaim for declaratory judgment that the contract is void by its terms because Krista failed to perform. Thompson also included a counterclaim for slander of title, which he later voluntarily dismissed. As the case progressed, Thompson filed a motion for partial summary judgment, arguing that Thompson's wife, Karen, was not a party to the lawsuit and therefore Krista could not be granted specific performance that he transfer the deed as his

wife had a dower interest that would need released. The trial court granted Thompson's motion.

{¶6} In response, Krista filed a motion to file an amended complaint to add Karen Thompson to the case. Although the trial court's entry granting Krista leave to file an amended complaint is missing from the record, subsequent filings by both parties indicate that the trial court issued an entry granting it. For example, because the trial court granted his motion to file an amended complaint, Krista filed a motion to vacate trial dates and issue a modified case management schedule which stated, "Now comes plaintiff, by and through counsel, and moves the Court vacate the currently scheduled trial dates *following the judgment entry granting leave to file plaintiff's first amended complaint* . . . ." (Emphasis added.) In response, the trial court issued an entry granting that motion stating, "Upon motion of Plaintiff, and it appearing that said motion should be granted, it is hereby ORDERED, ADJUDGED, AND DECREED that the trial currently scheduled for March 18, 19 and 2024, be and hereby is, vacated with a new scheduling order, including trial dates, to be scheduled by separate order." Shortly thereafter Karen and Terry Thompson filed an answer and counterclaim to Krista's first amended complaint. Karen did not raise failure of service as a defense or contend that the amended complaint was procedurally invalid under Civ.R. 15.

{¶7} The trial court set trial dates for the end of August 2024. However in mid-August 2024, approximately two weeks prior to the start of trial, Krista asked for a continuance because he was traveling out of the country to attend to family matters. The Thompsons opposed the continuance on the grounds that the trial

date had already been continued three times, was originally supposed to take place in December 2022, and Krista was simply trying to delay a matter for which he was never going to be willing, ready, or able to proceed. The trial court granted the continuance and set the trial dates for January 29 through 31, 2025.

{¶8}   On January 24, 2025, five days before trial was set to commence, Krista's trial counsel filed a motion to withdraw. In the motion, Krista's trial counsel explained in detail the problems he experienced communicating with, establishing meetings with, and obtaining documents from Krista. Trial counsel explained that he had been discussing with Krista the need for certain necessary documents since May 2023, but Krista was never forthcoming with them. Trial counsel scheduled a trial preparation meeting with Krista for January 9, 2025 at which Krista was to bring the necessary documents. However, Krista moved that meeting to January 14 and then called January 13 to move the January 14 meeting again. Krista promised to have the documents delivered to counsel by end of day January 14, or the following morning on January 15, at the latest, with an in-person meeting for January 22. However, Krista did not send the documents by January 15, and by January 20 trial counsel's attempts to reach Krista were not returned. Trial counsel repeatedly reached out to Krista January 20, 21, and 22 but Krista did not respond. Trial counsel learned from a business associate of Krista that he had not returned from being out of state and would not be back in Ohio until Friday January 24, 2025. Krista's business associate assured trial counsel that trial counsel would receive the documents on January 22, but the documents were never sent. Finally, with the trial date approaching, trial counsel notified Krista by text message at 8:15

a.m. on January 23, 2025, that if Krista did not contact him and send him the necessary documents by the end of the day, trial counsel would file a request to withdraw. Again, Krista failed to respond and neither Krista nor his business associate provided the documents. Trial counsel informed the trial court that Krista was informed of the trial date both by notice from the court and by numerous conversations trial counsel had with Krista.

{¶9} On the morning of the first day of trial, Krista's trial counsel was present, as were Terry Thompson and the Thompsons' attorney. The parties waited 15 minutes and then went on the record to state that, while Krista's trial counsel was present, Krista was not. The trial court asked Krista's trial counsel if he had any indication of Krista's whereabouts. Trial counsel explained that he had emailed Krista a copy of the motion to withdraw on January 23 and received no response from Krista and no communications from him since. Trial counsel had spoken to Krista's business associate the day before (January 28) and was told "that she spoke to Cris's [Krista] sister and Cris's sister speculated that Cris didn't intend to return to Ohio for this. And when I say return to Ohio, it was news to me that he was not in Ohio over the last couple of weeks."

{¶10} The trial court asked Krista's trial counsel to address the motion to withdraw and trial counsel stated that a key element of proof that he explained to Krista would be needed is evidence that Krista "was ready, willing and able to consummate the transaction at the time that it should have closed." Trial counsel explained repeatedly to Krista over the last couple of years during the pendency of the lawsuit that he needed proof that Krista had the funds to close. Krista "first

represented that he was going to get the documents to me and then stopped responding to me." Trial counsel explained that he interpreted Krista's failure to communicate "to mean that he didn't intend to meaningfully participate in these proceedings, which is why I filed a motion for leave to withdraw. He was on notice that I was going to do that. I served him with a copy of that. He's obviously not here today and I can't proceed without him, so I'd ask the Court to grant the motion. Obviously, his failure to appear would - - would justify the Court to take appropriate action as to his claims."

{¶11} After trial counsel acknowledged that his clients "failure to appear would justify the Court to take appropriate action to his claims" (i.e., dismiss them for failure to prosecute), the trial court likewise acknowledged this outcome, "[Y]ou outlined what inevitably will be happening with this case if you withdraw. Are you - - it is your intention, because your client is not here to help you navigate this, to withdraw today. Is that your request for today as well?" To which trial counsel responded affirmatively. The trial court granted the motion to withdraw, "The Court will grant your request to withdraw as counsel for Mr. Krista citing lack of communication and the fact that your client himself has failed to appear, therefore not being able to assist you in prosecution of this claim."

{¶12} The Thompsons proceeded on their counterclaim for declaratory judgment that the real estate contract was not enforceable. The trial court stated that as far as that claim goes, "I would just need a prima facie case, a little bit of evidence to make a finding. So I'll allow you to do that at this point in time."

{¶13} Thompsons' trial counsel submitted 11 trial exhibits: the real estate contract (which was also attached to Krista's complaint), Thompson's payment ledger, a copy of a check received by Thompson and tender by Krista's business associate, text messages between Thompson and Krista, Thompson's calendar entries of meetings between Thompson and Krista, a transcribed recording of one of their meetings, emails between Thompson and Krista's attorneys regarding the tentative December 2021 closing, the December 9, 2021 letter from Thompson's attorney deeming the contract of no further force and effect, a copy of Krista's Ohio identification card, and the real estate deed to the property.

{¶14} Terry Thompson took the stand and testified that what his attorney had stated while explaining the various trial exhibits was true and was also his testimony about what had transpired. Thompson testified that Krista never contacted Thomspon with a location for the closing and never presented any funds for the transaction even though Krista told Thompson he was going to pay cash for the property. Thompson testified that Krista asked Thompson to go overseas with him and bring back the cash in a bag but Thomspon was not willing to travel to Europe and return with a bag filled with "$ .5 million in cash." Thompson testified that Krista never showed him any proof that Krista had the money to close on the deal, nor did he ever explain to Thompson where he was going to get the funds. Thompson then testified that the 11 trial exhibits were true and accurate copies of the originals. Thompson further testified that he extended the closing date once from December 1, 2021 to December 8, 2021 and that there was no closing on either date and no further verbal or written extensions given by him to Krista.

**{¶15}** Travis Thompson testified that he was Terry Thompson's son and he accompanied his father to a meeting with Krista in November 2021 as the closing date approached and during that meeting Terry Thompson repeatedly reminded Krista that the December 1, 2021 closing date was coming up and that everything needed to be done by then in accordance with the contract. Travis testified that Krista assured them that there "shouldn't be a problem. No problem. Nothing to worry about. Everything was going to be taken care of." Travis testified that he was never aware that any closing ever occurred. Travis testified that his father told Krista that Thompson might do the transaction as a "1031 situation" but that it was nothing Krista needed to worry about on his end. Travis testified that Krista never responded or presented the funds and they heard no more from him until the lawsuit. Travis testified that his father incurred legal expenses because of the breach in an amount in excess of $24,000.

**{¶16}** The trial court dismissed Krista's claims "due to failure of proof." The court found that Krista failed to fulfill the conditions by failing to tender the balance of the purchase price as timely extended, declared that Terry Thompson was not in breach of the contract, and that Krista was not entitled to any further relief. The trial court further stated that all payments made by Krista prior to his breach were the exclusive property of Terry Thompson. By separate entry, the trial court granted Krista's trial counsel's motion to withdraw.

## II.    ASSIGNMENTS OF ERROR

**{¶17}** Krista raises the following assignments of error:

1.    The Trial Court erred in allowing Counsel to withdraw the morning of trial without inquiring as to whether Plaintiff-Appellant

would be prejudiced by the withdraw and without allowing Plaintiff-Appellant to respond.

2.      The Trial Court erred by dismissing Plaintiff-Appellant's complaint without the proper notice as required by Ohio Civil Rule 41.

3.      The Trial Court erred in determining that there was subject matter jurisdiction to render a declaratory judgment.

4.      The Trial Court erred in determining that there was competent, credible, and sufficient evidence to issue a declaratory judgment, or otherwise decide the case on the merits.

### III. LEGAL ANALYSIS

### A. Withdrawal of Counsel

**{¶18}** Krista contends that the trial court erred in allowing his counsel to withdraw the morning of trial without taking any action to ensure that Krista would not be prejudiced by the withdrawal and without allowing Krista to respond.

### 1. Standard of Review

**{¶19}** We review a trial court's decision on a motion to withdraw as counsel under the abuse of discretion standard. *State v. Miller*, 2001-Ohio-2635, * 3 (4th Dist.). "Accordingly, we will not reverse the decision of the trial court unless it is arbitrary, unreasonable, or unconscionable." *Id.; Ark Advanced Remediation, LLC v. Watson*, 2024-Ohio-2874, ¶ 21 (4th Dist.).

### 2. Legal Analysis

**{¶20}** Krista's argument that he was not given an opportunity to respond to his counsel's motion to withdraw and was prejudiced by counsel doing so ignores the salient fact that it was Krista who did not show up that morning for trial and who ceased all meaningful communications with his counsel. The cases Krista cites are

distinguishable on that basis. *Citibank, N.A. v. Katz*, 2013-Ohio-1041, ¶ 35 (8th Dist.) (Katz was present at the hearing when counsel moved to withdraw); *Bennett v. Bennett*, 86 Ohio App.3d 343, 346 (8th Dist. 1993) (Bennett was present at the hearing and was required to represent himself); *Wilson v. Wilson*, 2003-Ohio-4474, ¶ 3 (3d Dist.) (Cassie Wilson appeared for trial and was required to represent herself).

{¶21} Here trial counsel gave a full and detailed explanation about the circumstances under which he had no option but to withdraw and stated on the record that he provided a copy of the motion to Krista six days earlier and had heard nothing back from Krista. Krista did not respond to the motion prior to trial and he did not appear at trial to oppose it or seek a continuance. The trial court engaged in a meaningful colloquy with trial counsel and trial counsel discussed the ramifications to Krista's case by Krista's failure to appear, to communicate, and to provide counsel any documents or testimonial evidence to prove Krista's claims. Krista cannot show how the trial court's grant of his counsel's motion to withdraw could have possibly resulted in any prejudice. It was Krista who had failed to appear at trial. Had the trial court denied the motion, the outcome would have been the same – without Krista present, trial counsel would have sat at counsel table with no evidence or witnesses to prosecute Krista's claims. Counsel's presence or absence made no impact on the outcome on the trial therefore the withdrawal did not prejudice Krista.

{¶22} We find no support in the record for Krista's assertion that he was prejudiced because of his counsel's withdrawal or that he was deprived of an

opportunity to respond. Accordingly, the trial court did not abuse its discretion in granting Krista's counsel's motion to withdraw. We overrule Krista's first assignment of error.

### B. The Dismissal of Krista's Claims

**{¶23}** Krista contends that the trial court could not dismiss his claims due to his failure to present proof in support of them without giving him notice under Civ.R. 41(B)(1).

### 1. Standard of Review

**{¶24}** The decision to dismiss a complaint for failure to prosecute is within the sound discretion of the trial court, and an appellate court's review of such a dismissal is confined solely to the question of whether the trial court abused its discretion. *Pembaur v. Leis*, 1 Ohio St.3d 89, 91 (1982). The term "abuse of discretion" as it applies to a dismissal with prejudice for lack of prosecution "implies an unreasonable, arbitrary or unconscionable attitude on the part of the court in granting such motion." *Id*.; *Jones v. Hartranft*, 78 Ohio St.3d 368, 371 (1997). Dismissals with prejudice are subject to heightened scrutiny. *Williams v. Metro*, 2020-Ohio-3515, ¶ 23 (1st Dist.).

### 2. Legal Analysis

**{¶25}** First, we question whether Civ.R. 41(B)(1), which governs dismissals for failure to prosecute, is the proper framework under the record before us. Instead, Civ.R. 41(B)(2) governs dismissals for the failure of plaintiff to present sufficient evidence at a bench trial:

> (2) *Dismissal; Non-Jury Action.* After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the

plaintiff's evidence, the defendant, . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff . . . .

**{¶26}** Here, Krista's trial counsel appeared for trial. When the trial commenced, Krista's counsel stated that he did not have evidence to support Krista's claims because Krista was not present to testify or to present documents. Following Krista's failure to present evidence on his claims, Thompsons' counsel moved to dismiss Krista's claims and the trial court granted it, not "for failure to prosecute" but "due to a failure of proof." Therefore, it appears from the record that the dismissal was made pursuant to Civ.R. 41(B)(2), which contains no notice requirement, rather than Civ.R. 41(B)(1). We could overrule Krista's assignment of error on this basis alone.

**{¶27}** Nevertheless, assuming Civ.R. 41(B)(1) applies, we find that the legal authority Krista relies upon is distinguishable. To support his argument that the notice requirement in Civ.R. 41(B)(1) is essential, Krista cites *Allstate Insurance Co. v. Rule*, 64 Ohio St.2d 67 (1980), which involved a trial at which plaintiff, plaintiff's counsel, several of the defendants' counsel, and a defendant did not appear due to "severe weather conditions in southern Ohio." *Id*. at 68. The trial court proceeded forward with the trial despite the number of absences. The Supreme Court of Ohio held that the trial court could only order a Civ.R. 41(B)(1) dismissal or grant a continuance, but it could not proceed to trial without the plaintiff and plaintiff's counsel present. Contrary to Krista's contention, *Alllstate* does not discuss the notice requirement under Civ.R. 41(B)(1), because the trial court did not invoke that rule. Additionally, courts have distinguished *Allstate* on the basis

that neither the plaintiff nor his counsel was present for trial in *Allstate*. *See Nance v. Nance,* 1996 WL 104741, (Mar. 6, 1996 4th Dist.) (*Allstate* is distinguishable from cases where appellant's counsel attended the trial); *Riach v. Riach*, 1989 WL 331136 (Mar. 29, 1989 2d Dist.) (*Allstate* not applicable where appellant's counsel attended the hearing).

**{¶28}** Additionally, Civ.R. 41(B)(1) requires that the trial court provide notice "to the plaintiff's counsel" prior to dismissing the claims for failure to prosecute.

> Generally, notice is a prerequisite to dismissal for failure to prosecute under Civ.R. 41(B)(1). Hence, "[i]t is error for the trial court to dismiss plaintiff's case without notice for failure to prosecute *when plaintiff and his counsel fail to appear for trial* on the assigned trial date * * *." The purpose of notice is to "provide the party in default an opportunity to explain the default or to correct it, or to explain why the case should not be dismissed with prejudice." Notice allows the dismissed party to explain the circumstances causing his or her nonappearance. (Citations omitted.) (Emphasis added.)

*Logsdon v. Nichols*, 72 Ohio St.3d 124, 128 (1995).

**{¶29}** Based on the discussion between Krista's counsel and the trial court, we find that the trial court provided Krista's counsel with sufficient notice that it would dismiss Krista's claims and Krista's counsel was given an opportunity to and did explain the circumstances surrounding Krista's nonappearance. Indeed, Krista's counsel was aware that such an outcome would be likely when he candidly acknowledged, "Obviously, his failure to appear would - - would justify the Court to take appropriate action as to his claims." It would not have materially altered the outcome of the case had the trial court mechanically recited the notice provision at the conclusion of their colloquy.

**{¶30}** We find no support in the record for Krista's assertion that the trial court erred in dismissing his claims without adequate notice. Thus, assuming the dismissal was made pursuant to Civ.R. 41(B)(1) rather than (B)(2), the trial court gave adequate notice and did not abuse its discretion in dismissing the Krista's claims. We overrule Krista's second assignment of error.

### C. Trial Court's Jurisdiction to Render a Declaratory Judgment

**{¶31}** Krista contends that the trial court could not have granted the Thompsons declaratory relief because it is not clear whether all necessary parties were named. Krista argues that he is not sure he was granted permission to file the amended complaint to make Karen Thompson a party, nor is he sure whether he properly served Karen Thompson with it. If Karen Thompson was not a party, then Krista argues that the judgment is void.

**{¶32}** We summarily reject Krista's contention because we find that he was granted permission to file the amended complaint, he filed it, and Karen Thompson answered it without raising a failure of service defense. The trial court's entry granting Krista's motion to file an amended complaint appears to have been inadvertently omitted from the record. Based on the other relevant filings on the docket by the parties and the trial court's subsequent orders, it is undisputed that the trial court granted the motion. Thus, we find that Karen Thompson was made a party to the action.

**{¶33}** Moreover, even if we assume that the amended complaint was improperly filed or deficient in service, this would be an error Krista created. Under the invited-error doctrine, a party may not take advantage of an error that he

himself invited or induced the trial court to make. *In Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310 (1987).

**{¶34}** We overrule Krista's third assignment of error.

### D. The Sufficiency of the Evidence for the Declaratory Judgment

**{¶35}** Krista contends that there was not sufficient evidence for the trial court's finding that Thompson was not in breach of the contract and that Krista is not entitled to any further relief. Specifically, he argues that there was not sufficient evidence to support the trial court's finding that Thompson was not in breach of the contract. He also argues that the exhibits were not properly authenticated or admitted.

### 1. Standard of Review

**{¶36}** The abuse-of-discretion standard applies to the review of a trial court's holding regarding whether a declaratory judgment action is justiciable; once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13.

**{¶37}** In reviewing Krista's challenges to the trial court's evidentiary rulings:

> Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review. Thus, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. When, however, an appellant alleges that a trial court's evidentiary ruling was " 'based on an erroneous standard or a misconstruction of the law,' " an appellate court reviews the trial court's evidentiary ruling using a de novo standard of review. (Citations omitted.)

*State v. Wright*, 2017-Ohio-9041, ¶ 24-25 (4th Dist.).

2. Legal Analysis

**{¶38}**  "To prove a breach of contract claim, a plaintiff generally must show the existence of a contract, performance by the plaintiff, a breach by the defendant, and damage or loss to the plaintiff." *Alexander Local School Dist. Bd. of Education v. Village of Albany*, 2017-Ohio-8704, ¶ 28 (4th Dist.), citing *McCamon–Hunt Ins. Agency, Inc. v. Med. Mut. Of Ohio*, 2003-Ohio-1221, ¶ 10 (7th Dist.). We find the Thompsons presented sufficient evidence for the trial court to issue a declaratory judgment that Terry Thompson was not in breach of the real estate contract. The existence and terms of the contract were not in dispute and a copy was attached to Krista's complaint. Thompson testified that Krista did not perform his duties to set up a closing date for the real estate transfer or tender the funds for the transaction. Because Krista did not set up a closing date or tender the funds, Thompson's duty to transfer the deed was never triggered. Thompson's son testified that his father suffered damages of at least $24,000 in legal fees associated with Krista's breach. Based on our review of the evidence presented at trial, we find that the Thompsons presented sufficient evidence to establish that Terry Thompson was not in breach of the contract. The trial court did not err in issuing the declaratory judgment.

**{¶39}** As for Krista's contention that the exhibits were not properly authenticated, we find that he has waived this argument by failing to raise it at the trial court level. Courts have long held "the fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's

attention, and hence avoided or otherwise corrected." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982).

{¶40} Moreover, we find no basis to apply the plain error standard of review to this civil action. A "plain error" is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings. *Id*. at 209. "[I]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122–23 (1997).

{¶41} The real estate contact was attached to Krista's complaint and its authenticity undisputed. The calendar, payment ledger, and text messages were all from the Thompsons' personal records. The trial court asked Thompsons' counsel to verify with Thompson that all the exhibits were true and accurate to the best of his knowledge and Thompson reviewed them all and testified affirmatively that they were. The trial court was satisfied with the authenticity of the exhibits and admitted them without objection. "The authentication requirement contemplated by Evid. R. 901(A) invokes a very low threshold standard, requiring only sufficient foundational evidence for the trier of fact to conclude that the item is what the proponent claims it to be." *State v. Stephen*,

2025-Ohio-693, ¶ 28 (5th Dist.), citing *Weisbecker v. Weisbecker,* 2006-Ohio-5840, ¶ 22 (12th Dist.).

{¶42} We overrule Krista's fourth assignment of error.

IV. CONCLUSION

{¶43} We overrule appellant's assignments of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Costs to be paid by appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


                         For the Court,


                         _____
                         Michael D. Hess
                         Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**